## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KELLY EVANS,

                  Plaintiff,

      v.

GORDON FOOD SERVICES,

                  Defendant.

CIVIL ACTION NO. 3:14-CV-01242

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and under the laws of the Commonwealth of Pennsylvania. This matter is before the Court on Defendant Gordon Food Services' motion for summary judgment. (Doc. 21). The motion has been fully briefed, and oral argument on the motion was held on June 4, 2015. For the reasons provided herein, Defendant's motion will be granted.

### I. BACKGROUND

Plaintiff Kelly Evans was hired by Defendant Gordon Food Services in July of 2010 as a custodian at Defendant's Pottsville, Pennsylvania distribution center. (Doc. 22-2). She claims that throughout her employment, she was subjected to a sexually hostile work environment created by the comments and actions of her co-workers. (Doc. 1). Her last day of employment was August 12, 2012. (Doc. 1).

Shortly before Plaintiff resigned from her custodial position, counsel retained by Plaintiff contacted the Pennsylvania Human Resources Commission ("PHRC") in order to pursue a complaint of discrimination. On July 31, 2012, the PHRC responded to Plaintiff's inquiry by letter and attached a PHRC questionnaire for Plaintiff to complete. (Doc. 22-4).

The PHRC indicated that the questionnaire was designed to obtain information from Plaintiff to determine whether the PHRC retained jurisdiction over her concerns. (Doc. 22-4). The PHRC also advised Plaintiff that the completed questionnaire "is **NOT** considered a complaint." (Doc. 22-4, at 3). On August 5, 2012, Plaintiff's counsel replied to the PHRC by letter, representing that he enclosed the "HRC questionnaire for processing." (Doc. 22-5, at 2). However, rather than submitting the PHRC questionnaire that the PHRC originally forwarded to Plaintiff's counsel for completion, Plaintiff's counsel sent the PHRC a completed Equal Employment Opportunity Commission Intake Questionnaire ("EEOC"). (Doc. 26, at 16). On December 13, 2012, a human relations representative from the PHRC contacted Plaintiff's counsel requesting additional information that she claimed was needed in order to draft his client's complaint. (Doc. 22-6, at 2). Plaintiff's counsel was directed to submit to the PHRC the necessary information no later than December 27, 2012, and was warned that failure to respond within that timeframe would result in the PHRC suspending the processing of the complaint. (Doc. 22-6, at 2). Plaintiff's counsel did not respond to the PHRC's request for additional information until March 10, 2014, approximately one year and two months from the date the PHRC initially requested the additional information to aid in the drafting of a complaint.(Doc. 22-7, at 2).

In a letter dated April 7, 2014, a PHRC intake supervisor acknowledged receipt of the information that was requested in December of 2012, and requested that Plaintiff's counsel provide a reason for the delay in providing the requested information so that a determination could be made as to whether grounds existed for equitable tolling. (Doc. 22-8, at 2). It does not appear from the record that Plaintiff responded to the PHRC's request for equitable tolling arguments. On May 30, 2014, Plaintiff's counsel received a letter from the

PHRC refusing to accept Plaintiff's complaint "because it [was] clearly untimely with no grounds for equitable tolling." (Doc. 22-9, at 2). The PHRC subsequently issued Plaintiff a right-to-sue letter. Plaintiff did not file a separate charge with the EEOC, and did not receive a right-to-sue letter under 42 U.S.C. § 2000e.

On June 26, 2014, Plaintiff initiated this civil action setting forth three causes of action: sex discrimination pursuant to 42 U.S.C. § 2000e (Count I); intentional infliction of emotional distress (Count II); and negligent infliction of emotional distress (Count III).

On February 18, 2015, Defendant filed a motion for summary judgment (Doc. 21), together with a brief in support of its motion and corresponding exhibits. (Doc. 22). Defendant's motion for summary judgment does not address the factual allegations of Plaintiff's complaint. Rather, with respect to Count I of the complaint, Defendant contends that Plaintiff failed to file a timely complaint with the EEOC, a prerequisite for an action in federal court. With respect to Counts II and III of Plaintiff's complaint, Defendant argues that Plaintiff failed to bring her state law claims within the six month contractual limitations period as set forth in her employment application.

Plaintiff filed a brief in opposition to Defendant's motion for summary judgment on March 20, 2015. (Doc. 26). In her brief, Plaintiff argues that her Title VII claims are timely because Plaintiff's counsel filed a charge with the PHRC on Plaintiff's behalf, and instructed the PHRC to dual file with the EEOC. According to the Plaintiff, that the PHRC failed to fulfill its work sharing obligations should not impinge on Plaintiff bringing a Title VII claim in federal court, as Plaintiff obtained a right-to-sue letter from the PHRC. Plaintiff submits the Court should apply the discovery rule and grant Plaintiff leave to file her claim with the EEOC. Plaintiff also argues that her state law tort claims are not barred by the six month

contractual period of limitations because that provision contained within the employment application is unenforceable in that it is unsigned by both parties, lacks adequate consideration, is "extremely vague," and is unreasonable. (Doc. 26, at 11). Defendant filed a reply brief on April 3, 2015. (Doc. 28).

Having been fully briefed, this matter is ripe for disposition.

## II. SUMMARY JUDGMENT STANDARD

The Defendant moves for summary judgment pursuant to Rule 56.Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. Bald assertions that genuine issues of

material fact exist are insufficient. Indeed, where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law.

**III.**  DISCUSSION

A.  COUNT I: TITLE VII CLAIM

Defendant argues that Plaintiff's claims under Title VII are barred because Plaintiff did not file a timely charge of discrimination with the EEOC. Plaintiff contends that, although she never directly filed a complaint with the EEOC and the complaint was never cross-filed with the EEOC, she nonetheless may bring her federal civil rights suit because: (1) the right-to-sue letter issued to her by the PHRC constitutes final action by the EEOC, giving her the right to bring her Title VII claims in federal court; and, (2) administrative error on the part of the PHRC entitles her to equitable tolling of the 300-day period in which she was required to file an EEOC discrimination charge.

**1.**  **PHRC Right-To-Sue Letter**

Plaintiff concedes that she did not receive a right-to-sue letter from the EEOC. Plaintiff contends, however, that this Court maintains jurisdiction over her Title VII claims because she obtained a right-to-sue letter from the PHRC, and a right to sue letter from the PHRC constitutes final action by the EEOC. (Doc. 26, at 9).

It is well established that a plaintiff filing a Title VII claim must exhaust certain administrative remedies before filing suit in federal court. Those administrative prerequisites, set forth in 42 U.S.C. § 2000e-5, require a plaintiff to lodge a charge of discrimination with the EEOC. "A claimant cannot file a charge with the EEOC in a state, such as Pennsylvania, that provides an administrative remedy for employment discrimination, unless the charge has been first filed with the appropriate state agency and

either (1) 60 days have elapsed; or (2) the state agency has terminated its proceedings. 42 U.S.C. § 2000e–5(c)." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 (3d Cir. 1997). Pennsylvania and the EEOC have entered into a worksharing agreement whereby the PHRC and EEOC designate the other as its agent for the purpose of receiving and drafting charges and complaints. Thus, a claimant who files a charge of discrimination with one agency and instructs that agency to dual file with the other generally satisfies the requirements of both agencies. As Plaintiff concedes that she failed to directly file a charge of discrimination with the EEOC, Plaintiff can only proceed to federal court if she files a charge of discrimination with the PHRC, instructs the PHRC to dual file with the EEOC, and receives an EEOC right-to-sue notice. *Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011)(citing 42 U.S.C. § 2000e–5(e)(1); *Burgh v. Borough Council of the Borough of Montrose,* 251 F.3d 465, 470 (3d Cir. 2001); *see also Woodson*, 109 F.3d at 926.

Although "the right-to-sue letter is not a jurisdictional predicate for a lawsuit, the issuance of a right-to-sue letter is generally regarded as a condition that must be satisfied before suit is brought." *Perepchuk v. Friendly's Ice Cream Corp.*, No. 3:CV-97-1988, 2000 WL 1372876, at *5 (M.D. Pa. Mar. 28, 2000); *see Price v. Schwan's Home Servs., Inc.*, No. CIV.A. 05-220J, 2006 WL 897721, at *4 (W.D. Pa. Apr. 3, 2006) ("[E]ven if Plaintiff had properly filed a complaint with the PHRC and/or the EEOC complaining of a Title VII violation . . . Plaintiff's failure to obtain a right-to-sue letter for his Title VII claim is fatal to that claim.")(citing *Burgh,* 251 F.3d at 470 ("A complainant may not bring a Title VII suit without having first received a right-to-sue letter.")); *Diamente v. Wallenstein,* No. 89–9014, 1990 WL 139399, at *3 (E.D.Pa. Sept.19, 1990) ("Section 2000e–5(f)(1) of Title 42 requires that a plaintiff exhaust her administrative remedies with the Equal Employment

Opportunity Commission . . . before bringing a Title VII claim in this court.").

Against that backdrop, and in considering the record before this Court, the Court cannot conclude that issuance of a PHRC right-to-sue letter demonstrates exhaustion of Plaintiff's administrative remedies with respect to her Title VII claims at this summary judgment stage. [1] The mere fact that Plaintiff received a right-to-sue letter from the PHRC alone is not sufficient to preserve her right to sue in federal court. *See Morrison v. Nat'l City Home Loan Serv., Inc.*, No. 2:07CV99, 2007 WL 4322329, at *3 (W.D. Pa. Dec. 7, 2007)("Certainly, the right to sue letter issued by the PHRC would have no bearing on the plaintiff's federal claims or her right to sue under Title VII."). Indeed, this Court is unaware

---

[1] While the Court of Appeals for the Third Circuit has held that failure to obtain a right-to-sue letter is a curable defect, the procedural posture and underlying facts of this case do not warrant such relief. Specifically, "if the EEOC fails to issue a right to sue letter within 180 days of the date the plaintiff filed the discrimination charge, courts in this district have permitted a plaintiff to nonetheless maintain a Title VII action without obtaining a right to sue letter provided she can demonstrate that she requested a right to sue letter and was entitled to it." *Hillegass v. The Borough Of Emmaus*, No. CIV.A. 01-CV-5853, 2003 WL 21464578, at *3 (E.D. Pa. June 23, 2003). In particular, the Third Circuit reversed a dismissal for failure to exhaust where the plaintiffs were "entitled to such letters as a matter of right, 29 C.F.R. § 1601.28(a)(2), and [the] letters had been received with respect to the initial charges." *Anjelino v. New York Times Co.*, 200 F.3d 73, 96 (3d Cir. 1999); *see also Fromm v. MVM, Inc.*, No. 1:CV 04 1315, 2004 WL 5355973, at *6 (M.D. Pa. Dec. 14, 2004)(denying a motion to dismiss where plaintiff properly alleged that "he dual-filed the complaint with the EEOC, . . . that the PHRC issued a right-to-sue letter, . . . and that he [was] entitled to a right-to-sue letter from the EEOC and [ ] requested one"); *Salvato v. Smith*, No. CIV.A. 13-2112, 2013 WL 3431214, at *6 (E.D. Pa. July 9, 2013) (denying a motion to dismiss for failure to exhaust where plaintiff "clearly filed her complaint with the EEOC in a timely fashion . . . [and] requested that the Complaint be dual-filed with the [PHRC]"). Aside from the fact that this issue is now before the Court on a summary judgment motion, Plaintiff has nevertheless failed to demonstrate that she was entitled to a right-to-sue letter or requested one, as discussed in detail in Part 2.

of any case in this Circuit holding that a right-to-sue letter issued by a state administrative agency constitutes final agency action by the EEOC. See *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 583 n.13 (E.D. Pa. 2005)("The right-to-sue letters that the PHRC sent to [plaintiff] do not constitute final agency action by the EEOC. They include no mention of making claims under federal law or filing in federal court, and do not say anything about a ninety day period in which to file suit in federal court.") (citing *Gokay v. Pennridge Sch. Dist.,* No. 02-8482, 2003 WL 21250656 (E.D. Pa. 2003) ("We are aware of no case in this circuit holding that the closure of a state law administrative case by a state agency triggers the federal Title VII limitations period.").

The right-to-sue letter from the PHRA only demonstrates that plaintiff exhausted her administrative remedies regarding her PHRA claims. Plaintiff has not established that she was entitled to an EEOC right-to-sue letter or that she even requested one, and in fact, has conceded that a charge of discrimination was not directly filed, nor cross-filed with the EEOC. *See Fromm*, 2004 WL 5355973, at *6; *Marion v. City of Phila./Water Dep't*, 161 F. Supp. 2d 381, 384 (E.D. Pa. 2001) ("[M]any courts have permitted plaintiffs to maintain a Title VII action where they were able to show that they were entitled to the right-to-sue letter and requested it.").

Thus, absent grounds for equitable tolling, this Court does not have jurisdiction over this matter. *See Robinson v. Consol. Rail Corp.*, No. CIV.A. 1:07-CV-1641, 2010 WL 3842787, at *1 (M.D. Pa. Sept. 28, 2010) (quoting *Story v. Mechling,* 214 F. App'x 161, 163 (3d Cir. 2007) ("Exhaustion is a non-jurisdictional requirement subject to equitable exceptions.")).

**2.  Equitable Filing**

Plaintiff claims that she did not discover that the charge of discrimination was not

8

filed with the EEOC until Defendant filed the instant motion for summary judgment. Thus, Plaintiff argues the EEOC's filing requirement should be deemed satisfied based on some notion of "equitable filing."[2] "[I]n Title VII cases, courts are permitted in certain limited circumstances to equitably toll filing requirements, even if there has been a complete failure to file." *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). However, "[a]lthough the time limitation for filing with the EEOC may be equitably tolled, the doctrine of equitable tolling is to be applied 'sparingly.'" *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).

Equitable tolling "may be appropriate: (1) where the defendant [ ] actively misled the plaintiff . . . ; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."[3] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). A plaintiff must ultimately demonstrate, however, that she exercised due diligence in defending her legal rights to preserve her claim under the equitable tolling doctrine. *Campbell v. Potter*, No. CIV.A.01-CV-4517, 2005 WL 2660380, at *3 (E.D. Pa. Oct. 17, 2005) (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95 (1999)). Here, Plaintiff appears to argue that an extraordinary circumstance—the PHRC's mishandling of her claim---prevented her from asserting her rights. Courts in this district have found that a

---

[2] Plaintiff appears to argue that the "discovery rule" should be applied to toll the 300-day period in which she was required to file an EEOC discrimination charge, and that this Court should essentially stay the case until such time as she can file a proper discrimination charge with the EEOC.

[3] Plaintiff has no recourse with respect to the third category, as Plaintiff did not timely file her complaint with the PHRC.

bureaucratic mistake could constitute "extraordinary circumstances" warranting equitable tolling. *See Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, No. CIV.A. 09-1548, 2010 WL 4668469, at *6 (W.D. Pa. Nov. 9, 2010) ("Courts have sustained claims under the principle of equitable tolling where administrative agency error" has resulted in the failure to file) (citing *Berkoski,* 951 F.Supp. at 550 n. 4 (conjecturing that the doctrine of equitable tolling would apply where PHRC failed to transmit dual-filed charges to EEOC in accordance with terms of the worksharing agreement)).

Plaintiff has proffered two arguments in support of her position that equitable tolling should apply due to the PHRC's failure to fulfill its workshare obligations. First, Plaintiff argues that the PHRC failed to abide by its own internal protocols by "automatically" transmitting complaints it receives to the EEOC as a matter of course. Second, Plaintiff argues that regardless of said protocol, the PHRC failed to refer her charge to the EEOC in accordance with her affirmative request to do so.

With respect to Plaintiff's first argument, Plaintiff represented at oral argument that pursuant to the worksharing agreement, any complaint filed with the PHRC is "automatically" forward to the EEOC as a matter of course, and further, that Plaintiff's complaint was never received by the EEOC is thus evidence of an administrative failure on the part of the PHRC to fulfill its worksharing obligations, which warrants equitable tolling. Plaintiff does not cite to any authority or record evidence, such as an affidavit from an EEOC and/or PHRC official attesting that charges originally filed with the PHRC are routinely dual-filed with the EEOC. Moreover, Plaintiff does not provide the Court with the worksharing agreement itself that could support her representation that the PHRC somehow failed to comply with its own worksharing agreement that allegedly tasks the PHRC with

directing her complaint to the EEOC without being prompted to do so. Hence, Plaintiff has failed to meet her burden of establishing that equitable tolling should apply on the basis that the PHRC failed to conform to its own alleged internal procedures.

Aside from Plaintiff's failure to cite record evidence or authority in support of this argument, authority nevertheless exists that would preclude equitable tolling here, as it is established that "although the EEOC and the PHRC have a work-sharing agreement for the initial investigation of discrimination charges, . . . filing a charge with one is [not] automatically sufficient to file a charge with the other." *Kellam v. Independence Charter Sch.,* 735 F. Supp. 2d 248, 255 (E.D. Pa. 2010) (citing *Woodson,* 109 F.3d at 926–27). While a charge of discrimination that has been forwarded by the PHRC to the EEOC pursuant to the worksharing agreement may be sufficient to satisfy the filing requirements of the EEOC, evidence of the worksharing agreement alone cannot serve to show that the plaintiff invoked a federal administrative remedy as required by the EEOC. *Jankowski v. Fanelli Bros. Trucking Co.,* No. 3:CV-13-2593, 2014 WL 690861, at *9 (M.D. Pa. Feb. 24, 2014)(citing *Woodson,* 109 F.3d at 927). "Consequently, a claimant cannot rely on the [existence of a worksharing] agreement alone to show that the [EEOC] received his or her claim, but rather, must show a request to dual file with the [EEOC]." *Hatten v. Bay Valley Foods,* LLC, No. 11–1122, 2012 WL 1328287, at *3 (W.D. Pa. Apr. 17, 2012) (citations omitted).[4]

---

[4] Many of the cases cited here address charges of discrimination first filed with the EEOC that sought to be dual filed with the PHRC. The Court has applied the reasoning of these cases to the instant matter because "there is nothing in the [w]orksharing [a]greement or in the caselaw to suggest that complaints that are first-filed with the EEOC and sought to be dual-filed with the PHRC, should be treated differently from those that are first-filed with the PHRC and sought to be dual-filed with the EEOC." *Seybert v. Int'l Grp., Inc.,* No. CIV.A. 07-3333, 2009 WL 722291, at *17 (E.D. Pa. Mar. 17, 2009).

Indeed, courts within this Circuit have emphasized that claimants must clearly designate their intent to have a charge of discrimination dual-filed with both the PHRC and EEOC in order to preserve their state and federal claims. *See Berkoski v. Ashland Reg'l Med. Ctr.,* 951 F. Supp. 544, 549 (M.D. Pa. 1997) (finding that plaintiff correctly believed that filing his complaint with the PHRA, *coupled with a request for dual filing*, was sufficient to file with the EEOC) (emphasis added); *Hatten,* 2012 WL 1328287, at *3 (rejecting plaintiff's argument that he requested the EEOC to dual file his charge of discrimination in his EEOC intake questionnaire because "there is nothing in the text of the . . . [q]uestionnaire to suggest that [p]laintiff requested dual filing with the PHRC"); *Rhoades,* 2010 WL 4668469, *5 ("Courts in this Circuit interpreting the worksharing arrangement have held that where a plaintiff timely files a complaint with one agency, either the EEOC or the PHRC, *coupled with a request for dual filing,* then the complaint is deemed filed with both agencies as of that date.")(emphasis added). By this logic, it would be utterly senseless and duplicative to require a claimant to request dual filing if the agency, was, by its own initiative, automatically cross-filing all complaints it received as a matter of course. Accordingly, the argument that the PHRC mishandled Plaintiff's complaint by failing to automatically file any complaint it receives to the EEOC lacks an arguable basis in law and fact.

Plaintiff alternatively argues in her brief that filing the EEOC intake questionnaire with the PHRC sufficiently evinces an intent to dual file with the EEOC. Thus, Plaintiff argues that she took the necessary steps to preserve her federal claims. Again, Plaintiff has not cited any authority supporting as such. Nevertheless, the Court's review of the record reveals that Plaintiff did not take the "necessary and logical steps required to dual file [her] claims with the EEOC and the PHRC." *Pifer v. Myzak Hydraulics, Inc.*, No. 2: 13-CV-00452,

2015 WL 300489, at *3 (W.D. Pa. Jan. 22, 2015). To reiterate, a plaintiff first submitting a charge of discrimination to either the state or federal agency must affirmatively elect to dual-file her charge of discrimination with the corresponding agency in order to preserve her claims. For example, the court in *Carter v. Philadelphia Stock Exchange* found that the plaintiff properly requested the EEOC to dual-file her charge with the PHRC in a cover letter attached to the EEOC charge, on the first page of the charge itself, and on an official form used by the EEOC for dual-filing requests. No. CIV. A. 99-2455, 1999 WL 715205, at *1 (E.D. Pa. Aug. 25, 1999). Conversely, the court in *Kasali v. J.P. Morgan/Chase Manhattan Mortgage Corp.* held that a cover letter accompanying an EEOC charge which represented that plaintiff's counsel "would like to schedule the interviews now and in the meantime . . . complete all necessary intake questionnaires and dual filing requests," did not convey a request for dual-filing. No. CIV.A. 04-500, 2005 WL 2989299, at *3 (E.D. Pa. Nov. 7, 2005).

Here, Plaintiff submitted both a cover letter and an EEOC questionnaire to the PHRC for processing. (Doc. 26). The cover letter accompanying the EEOC questionnaire does not include a request that the PHRC dual-file with the EEOC. (Doc. 26). In fact, the contents of the cover letter suggest that there might have been a mistake with respect to what documentation Plaintiff intended to send the PHRC and what documentation was actually sent to the PHRC. While the cover letter explicitly states that Plaintiff was enclosing a completed *PHRC questionnaire* for processing, Plaintiff instead submitted the

*EEOC questionnaire* to the PHRC. (Doc. 22-5, at 2).[5] Moreover, the mere submission of the EEOC charge information questionnaire to the PHRC is not itself sufficient to evince an intent to dual file, as nothing on the charge information questionnaire form indicates that Plaintiff intended for the PHRC to dual file with the EEOC.

Plaintiff argues however, that she checked Box 1 on the questionnaire, which stated that she "want[s] to file a charge of discrimination, and [she] authorizes the EEOC to look into the discrimination [she] described [within the intake form]," and as such, the PHRC was placed on notice of her intent to dual file. (Doc. 22-3, at 5). This argument is unavailing. Even when drawing all reasonable inferences from the underlying facts in favor of Plaintiff, this Court finds that checking Box 1 of the EEOC intake questionnaire and submitting it to the PHRC would, at most, signal to the PHRC that Plaintiff was independently taking the initiative to file a separate charge of discrimination with the EEOC, especially when considering the purpose of the form. The EEOC intake questionnaire is intended to solicit information about claims of employment discrimination in order to determine whether the *EEOC* can assert jurisdiction over such claims. (Doc. 22-3). By checking Box I on that form, Plaintiff was, in effect, communicating *to the EEOC* that she wished to pursue a charge of discrimination rather than merely "talk to an EEOC

---

[5] Moreover, in conducting its own research, this Court has discovered only one case closely resembling the matter at hand. Specifically, the Eighth Circuit Court of Appeals in *E.E.O.C. v. Shamrock Optical Co.*, noted in dicta that the plaintiff was found to have dually filed a complaint with the EEOC because "[t]he complaint was filed with the [state agency] on a form provided by the EEOC, and was addressed simultaneously to both agencies." 788 F.2d 491, 492 n. 2 (8th Cir. 1986). However, this case is distinguishable from the instant matter, as the plaintiff in that case not only submitted the EEOC form to the state agency, but also took the additional step of addressing the forms to both agencies.

employee before deciding whether to file a charge of discrimination," as set forth in Box 2 of the form. (Doc. 22-3, at 5). Thus, the submission of the EEOC intake questionnaire to the PHRC alone would not effectively convey to the PHRC that Plaintiff was requesting the charge of discrimination to be dual filed with the EEOC. Accordingly, the Court finds that Plaintiff failed to properly request dual filing of her charge of discrimination with the EEOC.

Considering the circumstances in the case *sub judice*, the Court concludes that Plaintiff is not entitled to the requested equitable tolling of the statute of limitations to allow her to refile a charge of discrimination with the EEOC. As described above, the record is devoid of any equitable considerations with respect to bureaucratic error on the part of the PHRC that would allow this Court to toll the 300-day filing period. *Rhoades*, 2010 WL 4668469, at *6. Indeed, any fault for the failure to file a charge of discrimination with the EEOC falls on the shoulders of Plaintiff's counsel. That counsel for the Plaintiff did not attempt to contact or follow up with the EEOC after not receiving a right-to-sue letter is fatal to Plaintiff's claims. Because this Court finds that Plaintiff failed to exhaust her administrative remedies, and that none of Plaintiff's claims are saved by the doctrine of equitable tolling, Defendant's motion for summary judgment will be granted with respect to Count I of Plaintiff's complaint.

## B. COUNTS II & III: STATE LAW CLAIMS

Defendant contends that Plaintiff's state law tort claims (Counts II and III) are time-barred by the terms of the written employment agreement she entered into with Defendant.

The relevant language of the employment application at issue reads as follows:

> I agree that any action or suit against Gordon Food Service arising out of my employment or termination of employment, including but not limited to

claims arising under state or federal civil rights statutes, must be brought within six months of the event giving rise to the claim or be forever barred. I waive any statute of limitations to the contrary.

(Doc. 22-1, at 6).

The events giving rise to Plaintiff's tort claims allegedly occurred in 2012. Plaintiff did not file this lawsuit until 2014, well beyond the expiration of the contractual sixth month limitations period. Thus, pursuant to this employment agreement, Plaintiff's state law claims would be untimely. Plaintiff does not dispute the existence of the language above. However, she contends that the employment agreement: a) was not properly signed by either party; b) contains "extremely vague" language; c) lacks additional consideration; and, d) is manifestly unreasonable. (Doc. 26 at 10-11).

A federal court must look to the relevant state law on the formation on contracts to determine whether there is a valid employment agreement. In Pennsylvania, a contract will be considered valid where: 1) both parties manifest an intention to be bound by the agreement; 2) the terms of the agreement are sufficiently definite to be enforced; and 3) there is consideration. *ATACS Corp. v. Trans World Commc'ns, Inc.,* 155 F.3d 659, 666 (3d Cir. 1998); *see also Aircraft Guar. Corp. v. Strato–Lift, Inc.,* 103 F. Supp. 2d 830, 836 (E.D. Pa. 2000) ("[C]ontracts are enforceable when parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient definiteness to be specifically enforced."). In light of this standard, the Court considers Plaintiff's arguments in turn.

### 1. Plaintiff Manifested Mutual Assent to the Terms of the Contractual Limitations Period Provision

Plaintiff argues that the absence of her signature demonstrates a lack of mutual assent to the terms of the employment agreement. However, a valid and binding contract

can be formed despite the absence of signatures when the parties have otherwise manifested their mutual asset to the essential terms. *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.,* 739 A.2d 133, 136 (Pa. 1999). Here, the employment application required Plaintiff to "provide [her] consent [to the contractual limitations period] by selecting either I Agree or I Decline." (Doc. 27, at 9). Therefore, by selecting "I Agree," Plaintiff manifested her intent to be bound to that provision of the contractual agreement. Plaintiff has not presented sufficient evidence to rebut Defendant's contention that Plaintiff manifested assent to the terms of the employment agreement. Thus, the Court finds by clicking "I Agree," Plaintiff acknowledged her acceptance of the contractual limitations provision.

### 2. Contractual Limitations Period Does Not Require Additional Consideration

Plaintiff argues that a contractually-shortened limitations period provision included within an employment application requires separate consideration in order for it to be enforced. However, Plaintiff offers no legal authority in support of this position, nor is this Court aware of any Pennsylvania case inquiring into the adequacy of consideration required to support an employment application containing a clause reducing the limitations period. Indeed, in Pennsylvania, even restrictive covenants are held valid and enforceable "where the covenant [is] entered as part of the contract establishing a new employment relationship, [as] the employment itself constitutes consideration supporting that covenant, [and] the other terms of the employment contract." *Geisinger Clinic v. Radziewicz*, 2015 PA Super 95 (Apr. 24, 2015) (citation omitted). Accordingly, this Court finds that by mere virtue of the fact that employment was taken, consideration existed to support the limitations period provision within the employment contract.

### 3. Contractual Limitations Period Is Unambiguous

Plaintiff additionally argues that the provision reducing the statute of limitations is ambiguous. An ambiguity exists if the contractual terms are susceptible to two reasonable alternative interpretations. *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir. 1991)(citing *Mellon Bank N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980)). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Newport Assocs. Dev. Co. v. Travelers Indem. Co.,* 162 F.3d 789, 792 (3d Cir. 1998) (citing *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir. 1987); *Landtect Corp. v. State Mut. Life Assurance Co.,* 605 F.2d 75, 80 (3d Cir. 1979)). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the Court as a matter of law. *Mellon Bank, N.A.*, 619 F.2d at 1011 n. 10.

"The threshold determination of whether a writing is 'ambiguous' necessarily lies with the court." *Ready Food Prods., Inc. v. Great N. Ins. Co.*, 612 A.2d 1385, 1387 (Pa. Super. Ct. 1992); *see also Mellon Bank*, 619 F.2d at 1011. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (quoting *Murphy v. Duquesne Univ.*, 777 A.2d 418, 429–30 (Pa. 2001)). In reviewing the contract for ambiguity, the Court "must read the contractual provisions to avoid ambiguities if possible." *Great Am. Ins.*, 544 F.3d at 247 (citing *Masters v. Celina Mut. Ins. Co.*, 224 A.2d 774, 776 (Pa. Super. Ct. 1966)). "[S]pecific provisions ordinarily control more general provisions." *Great Am. Ins.*, 544 F.3d at 247 (*citing In re Alloy Mfg. Co. Emps. Trust*, 192 A.2d 394, 396 (Pa. 1963))."Trade terms, legal terms of art, numbers, common words of accepted usage and terms of a similar nature

should be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent." *Mellon Bank*, 619 F.2d at 1013. Ultimately, however, "[i]f the words of the contract are capable of more than one objectively reasonable interpretation, the words are ambiguous." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011).

Here, Defendant argues that the contractual provision is similar to clauses previously enforced by the Third Circuit and Pennsylvania courts in that the clause at issue details the actions to which is applies, the applicable time period, and its effect on the statute of limitations, and thus is not ambiguous. Plaintiff responds that the "application does not specifically state that a *complaint* must be brought within six months; Plaintiff brought her claim by filing her charge with the PHRC . . . well within the alleged six month contractual agreement." (Doc. 26, at 10). Here, Plaintiff does not offer a reasonable alternative interpretation of the terms of the contract. Thus, the Court finds that the language of the contract is unambiguous and susceptible to only one meaning: that Plaintiff was required to bring her state law tort claims within six months of the alleged misconduct. In applying the provision's unambiguous terms to the issue of performance, the Court concludes that Plaintiff failed to fulfill her contractual obligations by filing her tort claims within six months of the alleged discriminatory misconduct. Plaintiff's argument that by initiating a charge of discrimination with the PHRC she satisfied her contractual obligation, while accurate with respect to her federal civil rights claims, does not relieve her of the obligation to raise her state law tort claims within that six month period, of which she failed to do. Thus, this Court finds that Plaintiff failed to abide by the unambiguous terms of the contractual agreement.

### 4.    The Contractual Limitations Period is Reasonable

Lastly, Plaintiff argues that contractual limitations period is manifestly unreasonable. Under Pennsylvania law, contractual modification of a limitations period is generally valid and enforceable. *See Cole v. Fed. Exp. Corp.*, No. CIV.A. 06-3485, 2008 WL 4307090, at *9 (E.D. Pa. Sept. 19, 2008)("Generally, absent a controlling statute to the contrary, a contractual provision may validly limit the time for bringing an action to a period shorter than that set by the general statute of limitations, provided that the contractual provision is reasonable.")(citing *Order of United Commercial Travelers of Am. v. Wolfe,* 331 U.S. 586, 608 (1947); *Missouri, Kansas & Texas R.R. Co. v. Harriman Bros.,* 227 U.S. 657, 672 (1913) ("The policy of statutes of limitations is to encourage promptness in the bringing of actions. . . . [T]here is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court.")). Indeed, Pennsylvania statutory law authorizes parties to contractually modify a limitations period. *See* 42 Pa. Cons.Stat. Ann. § 5501(a) ("An action . . . must be commenced within the time specified in . . . unless, in the case of a civil action or proceeding . . . a shorter time which is not manifestly unreasonable is prescribed by written agreement."). Plaintiff has cited no authority for her assertion that a six-month limitations period is unreasonable, either generally or in the context of a state law tort claim. In fact, courts within this jurisdiction and other jurisdictions have enforced abbreviated limitations periods contractually agreed to by the parties in employment applications, specifically six-month limitations periods. *Cole,* 2008 WL 4307090, at *9 (citing *Soltani v. W. & S. Life Ins. Co.,* 258 F.3d 1038, 1044 (9th Cir. 2001); *Myers v. Western-Southern Life Ins. Co.,* 849 F.2d 259 (6th Cir. 1988); *Johnson v. DaimlerChrysler Corp.,* No. C.A.

02–69 GMS, 2003 WL 1089394 (D. Del. 2003)). This Court finds nothing unreasonable about a six-month limitation for state law claims such as those brought by Plaintiff in this case. Moreover, the six-month contractual limitations period does not impermissibly interfere with or abrogate Plaintiff's ability to bring her Title VII claims.

Accordingly, as the present claims are time-barred by the contractual limitations period, this Court will grant Defendant's motion for summary judgment and dismiss Count II and Count III of Plaintiff's complaint.

**IV. CONCLUSION**

Based on the foregoing, this Court will grant Defendant's motion for summary judgment and dismiss Plaintiff's complaint.

An appropriate Order will follow.

BY THE COURT:

Dated: July 29, 2015

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**